IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEFFREY DAVID BETHEL,
individually, and as the sole
member of Santa Performance, LLC
and SANDIA PERFORMANCE, LLC,

   Plaintiffs,

v.           20-cv-596 MV/JHR

SANDIA AEROSPACE CORPORATION,
a New Mexico corporation, DENNIS
SCHMIDT, and HONEYWELL
INTERNATIONAL, INC.,
(BENDIXKING division),

   Defendants.


**<u>MEMORANDUM OPINION AND ORDER</u>**

  THIS MATTER comes before the Court on Defendant Honeywell International, Inc.'s

Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim [Doc. 40].  The

Court, having considered the Motion and relevant law, finds that the Motion is well-taken in part

and will be granted in part and denied in part.

## BACKGROUND

  Plaintiff Jeffrey David Bethel independently developed substantial portions of an

innovative new display product for the general aviation marketplace.  Doc. 38 ¶ 16.  On May 22,

2015, Mr. Bethel entered into an Independent Contractor and Intellectual Property Agreement

("the Contract") with Defendant Sandia Aerospace Corporation ("Sandia") for the purpose of

bringing this newly developed technology to the market.  *Id.* ¶ 19.  The new product, described

1

in the Contract as "an aircraft instrument. . . capable of displaying aircraft roll, pitch, airspeed, and attitude," was, at the time the Contract was executed, designated "SAI340."  Doc. 1-1 at 1.  Mr. Bethel and Sandia intended for "the remaining required engineering work" on SAI340, or the "Instrument," "to be completed under a cooperative effort between Sandia and [Mr.] Bethel."  Doc. 38 ¶ 20.

The Contract indicates that development of the Instrument included two components: "Mechanical Design," defined to include but not be limited to "mechanical, electrical, and graphic design"; and "Software," defined to include but not be limited to "source code, object code, configuration files, calibration code, and production test code."  Doc. 1-1 at 1.  "The unique and innovative user interface design incorporated into the SAI-340 . . . was fully implemented in the [S]oftware."  Doc. 38 ¶ 33.

Pursuant to an "Assignment" provision in the Contract, Mr. Bethel assigned, transferred, and conveyed to Sandia "all his right, title and interest in the Mechanical Design."  Doc. 1-1 at 2.  Pursuant to a "Software Ownership" provision in the Contract, Mr. Bethel retained "all his right, title, and interest in the Software, including the associated intellectual property rights (e.g., copyright and patent)."  *Id.* at 2.  Mr. Bethel registered a copyright for "SAI-340," effective as of October 2, 2017.  Doc. 1-1 at 10.  The Certificate of Registration indicates that SAI-340 is a "computer program," and was completed in 2015.  *Id.*

The Contract also contains a "Software License" provision, which states as follows:

> Subject to the payment of royalties, Bethel hereby grants to Sandia an exclusive license in the Software.  Bethel retains no right to use or license the Software in any aviation related application.  Further, in the event that ownership of the Software is to be transferred to a third party, to the extent permitted by law Bethel shall insure that such transfer will be subject to the terms of this Agreement.

*Id.*  Pursuant to a "Royalties" provision, Sandia agreed to pay Mr. Bethel "a royalty of $1,000 . . . [f]or each Instrument sold by Sandia."  *Id.* at 3.  Pursuant to the Contract, "Sandia would be free to utilize the conveyed intellectual property for newly developed products but would be required to make the $1,000 per-unit royalty payment if any product they produced directly incorporated the same basic feature set as the SAI-340."  Doc. 38 ¶ 24.

In October 2015, Sandia determined that the SAI-340 was complete and ready for commercial production.  *Id.* ¶¶ 44-45.  Sandia thus began to fulfill pre-orders, which were "in the hundreds of units."  *Id.* ¶ 45.  Sandia "initially complied with their contractual obligation to pay the $1,000 per unit royalty for each Instrument sold."  *Id.* ¶ 46.

In March 2017, representatives of Defendant Honeywell International, Inc. (BendixKing division) ("Bendix") approached Sandia about the possibility of creating a Bendix-branded product variant of the SAI-340, to be named the KI-300.  *Id.* ¶ 47.  "Bendix's own internal documents, including a Statement of Work, copies of which were sent to Bethel, acknowledged the technical nature of the desired product and evidenced a clear intent that the product would be derivative of Bethel's intellectual property."  *Id.* ¶ 49.  Upon learning that Mr. Bethel, rather than Sandia, "retained the copyright in major portions of the operational software" of the Instrument, and "that Sandia was legally bound to pay Bethel a $1,000 per-unit royalty, Bendix approached Bethel directly in an attempt to negotiate more attractive licensing terms."  *Id.* ¶ 50.  Essentially, Bendix wanted to pay less money in royalties to Mr. Bethel than the $1,000 per unit as required by Mr. Bethel's contract with Sandia.  *Id.* ¶ 51.  During the negotiation process, Mr. Bethel "supplied [to Bendix] copies of the existing Sandia/Bethel licensing agreement."  *Id.* ¶ 53.  Negotiations between Mr. Bethel and Bendix ultimately failed.  *Id.* ¶ 67.

In July 2017, Bendix launched a marketing campaign at an avionics trade show in

Oshkosh, Wisconsin to promote the KI-300, which was the product of work jointly undertaken

by Bendix and Sandia.  *Id.* ¶¶ 68, 75.  The KI-300 units displayed there "were simply reworked

SAI-340 units of Bethel's design, with a slightly modified bezel and the Bendix corporate logo

painted on the product's faceplate."  *Id.* ¶ 70.  At the show, Mr. Bethel "personally observed that

the innovative techniques and features of the SAI-340 user interface generated by Bethel's

software were being directly utilized in the KI-300, with only minor color variations being

applied."  *Id.* ¶ 71.

After the launch of the KI-300, Bendix and Sandia entered into an agreement whereby

"Sandia would manufacture the branded KI-300 for Bendix, directly utilizing Bethel's

intellectual property," but no royalties would be paid to Mr. Bethel.  *Id.* ¶ 92.  Thereafter, Bendix

forbade certain of its staff and third-party contractors from communicating with Mr. Bethel, and

Sandia likewise instructed its employees not to talk to Mr. Bethel or allow him to enter the

Sandia facilities.  *Id.* ¶¶ 95-100.

For a period of a year or more, Sandia and Bendix "reverse-engineer[ed] Bethel's

software," without taking any steps to protect Mr. Bethel's copyrights therein.  *Id.* ¶¶ 103-04.

Specifically, "Sandia hired a third-party software engineer who was tasked explicitly with

copying Bethel's user interface, verbatim."  *Id.* ¶ 105.  "Persons at Sandia who were intimately

familiar with Bethel's source code and who had direct access to Bethel's source code undertook

the effort to rewrite Bethel's code, and to remove Bethel's copyright notifications, and made no

effort whatsoever to 'clean-room' or properly attempt to reverse-engineer the design."  *Id.* ¶ 106.

In November 2018, "Sandia and Bendix started the full production, manufacture, and sale

of the KI-300," and paid no royalties to Mr. Bethel.  *Id.* ¶ 110.  Mr. Bethel purchased a KI-300;

4

Sandia did not report the sale to him or pay him any royalty based on that purchase.  *Id.* ¶¶ 111-12.   Sandia also stopped making royalty payments to Mr. Bethel on sales of the SAI-340.  *Id.* ¶ 114.  Although Sandia "has continued to manufacture and sell hundreds of both the SAI-340 and KI-300 instruments that directly utilize Bethel's licensed intellectual property," no royalties have been paid to Mr. Bethel.  *Id.* ¶ 115.

As a result, on June 22, 2020, Mr. Bethel commenced the instant action, filing a complaint against Sandia, Dennis Schmidt, who is the owner of Sandia, and Bendix.  Doc. 1.  Subsequently, on November 23, 2020, Mr. Bethel filed his First Amended Complaint ("FAC") for Copyright Infringement, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Intentional Interference with Contract and Interference with Prospective Contractual Relations, Civil Conspiracy, Alter Ego, Fraudulent Misrepresentation, Conversion, Unjust Enrichment, Constructive Trust, Prima Facie Tort and Punitive Damages [Doc. 38].  Bendix filed a motion to dismiss all counts of the FAC asserted against it, which Mr. Bethel opposes.  Bendix's motion is now before the Court.

## STANDARD

Under Rule 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible"). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (citation omitted).

In keeping with these two principles, the Court explained,

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Id.* at 679.

6

## DISCUSSION

In the FAC, Mr. Bethel asserts the following claims against Bendix:  copyright infringement, contributory copyright infringement, intentional interference with contract and prospective contractual relations, civil conspiracy, unjust enrichment, constructive trust, prima facie tort, and punitive damages.   On the instant motion to dismiss, Bendix argues that Mr. Bethel has failed to state a claim upon which relief can be granted as to each of these counts. The Court addresses each count in turn.

I.      Copyright Claims

    A.      Direct Copyright Infringement

In Count I, Mr. Bethel asserts that, based on the facts as outlined above, Sandia and Bendix used his copyrighted material without authorization, directly or contributorily infringed on his rights to his copyrighted software, and made "derivative works based on his copyrighted material . . . by reverse engineering [his] copyrighted source code and by grossly exceeding their authority conveyed under the parties' licensing agreement," all in violation of 17 U.S.C. §§ 106 and 501.  Doc. 38 ¶¶ 137-139.  To state a claim of copyright infringement, a plaintiff must allege two elements: "(1) "ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Craft Smith, LLC v. EC Design, LLC*, 969 F.3d 1092, 1099 (10th Cir. 2020) (citation omitted).  To adequately allege the first element, a plaintiff must allege facts that, if proven, would "demonstrate ownership of a valid copyright in the allegedly infringed work." *Id.*  "Often, a party accomplishes this by producing a certificate of registration from the Copyright Office."  *Id.*  The second element "consists of two components."  *Id.* at 1101.  First, the plaintiff must allege "factual copying," and second, the plaintiff must allege "substantial similarity between the allegedly infringing work and the elements of the copyrighted work that

7

are legally protected." *Id.* "Factual copying" includes the reproduction of the copyrighted work, the preparation of derivative works based on the copyrighted work, and the distribution of copies of the copyrighted work to the public. 17 U.S.C. § 106. Further, to adequately allege "factual copying," a plaintiff may allege facts that, if proven, would demonstrate either "that the defendant copied his program" or that "the defendant had access to the copyrighted program and there are probative similarities between the copyrighted material and the allegedly copied material." *Gates Robber Co. v. Bando Chem. Indus.*, 9 F.3d 823 (10th Cir. 1993).

As to the first element of his copyright claim, namely, ownership of a valid copyright, Mr. Bethel alleges that he registered a copyright for SAI-340. Mr. Bethel has also submitted a copy of that registration to the Court. As noted above, this is sufficient to satisfy Mr. Bethel's pleading requirement as to the first element of his copyright claim.

While Bendix does not dispute Mr. Bethel's allegation or the existence of his copyright in SAI-340, it nonetheless argues that Mr. Bethel has not adequately alleged ownership of a valid copyright. In support of that argument, Bendix notes that Mr. Bethel's copyright extends only to "a computer program that is supposedly the source code for the SAI-340 device." Doc. 40 at 5. And, pointing to Mr. Bethel's allegation that he "observed that the techniques and features of the SAI-340 user interface generated by [his] software were being directly utilized in the KI-300," Bendix concludes that Mr. Bethel's assertions of copying apply only to elements of the KI-300 that are not source code, and thus are not within the scope of Mr. Bethel's copyright protection. *Id.*

This argument, however, "misapplie[s] copyright infringement's first element, which requires only the existence of a valid copyright in the allegedly infringed [] work as a whole." *Craft Smith*, 969 F.3d at 1100. "[B]ecause element one concerns only the existence of a valid

8

copyright in the allegedly infringed work, [this Court] concludes that it is satisfied." *Id.* at 1101. This conclusion "takes us to the next step, that is, examining the scope of this valid copyright," which is resolved "in element two." *Id*.

As to the first component of the second element, namely, factual copying, Mr. Bethel alleges that Bendix and Sandia's KI-300 units, which they displayed and promoted at an avionics trade show, "were simply reworked SAI-340 units of Bethel's design," with only slight modifications, and that Mr. Bethel "personally observed that the innovated techniques and features of the SAI-340 user interface generated by Bethel's software were being directly utilized in the KI-300," again with only minor variations. These allegations, if proven, would establish that Sandia and Bendix reproduced Mr. Bethel's design and software. Further, Mr. Bethel alleges that Sandia and Bendix "reverse-engineer[ed] Bethel's software," which involved hiring a third-party software engineer to copy Mr. Bethel's "user interface" and having Sandia staff, who were familiar with and had direct access to Mr. Bethel's source code, "rewrite Bethel's code." These allegations, if proven, would establish that Sandia and Bendix prepared derivative works based on his copyrighted work. Finally, Mr. Bethel alleges that Sandia and Bendix manufactured and sold the KI-300. This allegation, if proven, would establish that Sandia and Bendix distributed copies of Mr. Bethel's copyrighted work to the public. These allegations thus plausibly allege "factual copying."

Bendix nonetheless argues that Mr. Bethel fails to adequately plead factual copying. According to Bendix, the FAC fails to allege how it "either directly copied or had access to [Mr. Bethel's] copyrighted work or "any facts that would support a finding of factual copying . . . by [Bendix]." Doc. 40 at 6. These contentions are belied by the allegations described above, which detail the ways in which Sandia and Bendix, together, accessed Mr. Bethel's copyrighted code,

9

copied that code, reworked it, and used it to create, manufacture, and sell the KI-300.

As to the second component of the second element, namely, substantial similarity between the allegedly infringing work and the elements of the copyrighted work that are legally protected, Mr. Bethel alleges that the "user interface" of the KI-300 was a "verbatim" copy of Mr. Bethel's "user interface."  Mr. Bethel further alleges that the KI-300, as promoted at the July 2017 avionics trade show, was simply a "reworked" SAI-340 "of Bethel's design," with slight modifications.  Mr. Bethel also alleges that he "personally observed that the innovative techniques and features of the SAI-340 user interface generated by Bethel's software were being directly utilized in the KI-300," with only minor variations.

In contesting the sufficiency of these allegations, Bendix asserts that Mr. Bethel would not have been "able to deduce infringement of copyrighted software code when he 'observed' the SAI-340 user interface," because none "of the graphical features or interface for the SAI-340" were covered by Mr. Bethels' copyright, which applied only to "the source code of the SAI-340 device."  Doc. 40 at 5.  In other words, Bendix argues that, even if Mr. Bethel noted similarities between the KI-300 and the SAI-340, those similarities did not relate to any of the legally protected elements of the SAI-340.  This argument, however, raises a fact issue rather than a pleading issue.  Whether Mr. Bethel ultimately can prove his allegations or whether, as Bendix argues, the similarities between the SAI-340 and the KI-300 are elements outside the scope of Mr. Bethel's copyright protections is a question of fact not properly before the Court on the instant motion to dismiss.

Bendix also contends that Mr. Bethel fails "to identify the protectable elements that have been copied contentions."  Doc. 40 at 6.  This contention is unavailing, as Mr. Bethel *does* identify which elements of his copyright are similar to the KI-300, namely, the "user interface"

10

and "design," and states that these elements are protected by his copyright, as they were

manifestations of the utilization of his software in the KI-300.  Accordingly, Mr. Bethel's

allegations are sufficient to plausibly plead that his copyrighted software code was infringed.

Further, Bendix denies the accuracy of Mr. Bethel's well-pleaded factual allegations,

arguing that it did not "incorporate[e] any of the copyrighted software into any Honeywell or

BendixKing product."  Doc. 47 at 3.  But denying the substance of Mr. Bethel's allegations is

misplaced on the instant motion to dismiss.  "[A] Rule 12(b)(6) motion tests [only] the

sufficiency of the allegations within the four corners of the complaint." *Mobley*, 40 F.3d at 340.

Finally, Bendix argues that Mr. Bethel is foreclosed from bringing a copyright

infringement claim because, pursuant to the Software License Provision of the Contract, he

granted Sandia an exclusive license in the Software of the SAI-340.  Doc. 40 at 6.  As Bendix

appears to acknowledge, a copyright owner is not foreclosed from bringing a copyright

infringement claim in the face of an exclusive license; rather, she may bring such a claim where

"the licensee exceeds the *scope* of the copyright license."   *Evolution, Inc. v. SunTrust Bank*, 342

F. Supp. 3d 943, 953 (D. Kan. 2004) (emphasis in original); *see also Yamashita v. Scholastic

Inc.*, 936 F.3d 98, 105 (2d Cir. 2019) ("[W]hen the *existence* of a license is not in question, a

copyright holder must plausibly allege that the defendant exceeded particular terms of the

license.") (emphasis in original).  Bendix contends that Mr. Bethel cannot plausibly allege that

Sandia exceeded the scope or terms of the license because the Software License Provision

"allowed for transfer of ownership of the Software to a third party," and the grant of an exclusive

license to Sandia "qualifies" as such a contemplated "transfer of the ownership rights granted

under the Copyright Act.  Doc. 40 at 7.  Based on these contentions, Bendix concludes that "any

use of the copyright by Bendix[] is proper under the sublicensing rights that Sandia was clearly

granted under the license." *Id*.

Bendix's argument reflects a misreading the Software License provision. This provision does not transfer ownership of Mr. Bethel's copyrighted software to Sandia; indeed, it would be nonsensical if it did, as elsewhere the Contract specifically provides that Mr. Bethel retains "all his right, title, and interest in the Software, including the associated intellectual property rights." To the contrary, the Software License provision states that "in the event that ownership of the Software is to be transferred to a third party" – ostensibly by Mr. Bethel, who explicitly retained ownership of the Software – "Bethel shall insure that such transfer will be subject to the terms of this Agreement." In other words, the Software License provision directs Mr. Bethel to ensure that, if he decides to transfer *his ownership rights* in the Software to a third party, any such transfer protects *Sandia's license* to the Software.

Accordingly, nothing in the Software License provision transfers Mr. Bethel's ownership in the Software to Sandia, gives Sandia "sublicensing rights" to the Software, or otherwise allows for "use of the copyright" by Bendix. Doc. 40 at 6-7. It follows that Bendix cannot point to the Software License provision as foreclosing Mr. Bethel's claim that, together with Bendix, Sandia exceeded the scope or terms of its license in the Software by copying that Software and using it for the KI-300. Mr. Bethel's copyright infringement claim thus is not subject to dismissal on the basis that he granted Sandia an exclusive license in the Software.

B.   Contributory Infringement

In Count IV, Mr. Bethel asserts a claim of contributory copyright infringement, alleging that Bendix induced the infringement of his copyrights. Doc. 38 ¶ 164. A defendant can be "secondarily liable for another's copyright infringement under principles of vicarious and contributory liability." *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013).

"[C]ontributory liability attaches when the defendant causes or materially contributes to another's infringing activities and knows of the infringement." *Id.*

Bendix argues that this claim must be dismissed, because it presupposes "that someone directly infringe the asserted copyright." Doc. 40 at 8. According to Bendix, Mr. Bethel "cannot prove direct infringement," and thus "there can be no claim against [Bendix] for contributory infringement." *Id.* As discussed above, however, the Court finds that Mr. Bethel has stated a (direct) copyright infringement claim. Accordingly, Bendix has proposed no valid basis for dismissal of Mr. Bethel's contributory infringement claim.

II.     State Law Claims

        A.     Intentional Interference with Contract and Prospective Contractual Relations

        In Count IV, Mr. Bethel asserts claims of intentional interference with contract and interference with prospective contractual relations. In support of those claims, Mr. Bethel alleges that "[p]erformance of the contract Bethel had with the parties involved herein has been impaired or refused, materially and intentionally, through the actions of the Defendants" (including Bendix). Doc. 38 ¶ 162. Further, Mr. Bethel alleges that the Defendants (including Bendix), "have played an active and substantial part in causing Bethel to lose the benefits of his contract and/or potential future contracts with various parties involved herein and possibly with others in the market space related to his intellectual property." *Id.* ¶ 163.

        Under New Mexico law, to adequately allege intentional interference with an existing contract against Bendix, Mr. Bethel must state facts that, if proven, would demonstrate that (1) Bendix had knowledge of a contract between Mr. Bethel and Sandia, (2) performance of the contract was refused, (3) Bendix played an active and substantial part in causing Mr. Bethel to lose the benefits of the contract, (4) damages flowed from the breached contract, and (5) Bendix

13

induced the breach without justification and privilege. *Guest v. Berardinelli*, 195 P.3d 353, 363 (N.M. Ct. App. 2008). Similarly, to adequately allege intentional interference with prospective contractual relations against Bendix, Mr. Bethel must show that Bendix damaged him by either (1) inducing or otherwise causing Sandia not to enter into or continue a prospective relation with Mr. Bethel or (2) preventing Mr. Bethel from acquiring or continuing a prospective relation with Sandia. *Id.* "To prove either cause of action, [Mr. Bethel] must demonstrate that [Bendix] interfered either through improper means or improper motive." *Id.* (citation omitted).

Mr. Bethel alleges that he supplied to Bendix copies of the contract between Mr. Bethel and Sandia, that Sandia stopped making royalty payments as required by the contract, and that damages flowed to Mr. Bethel from the loss of royalties. Accordingly, three of the elements of his interference with existing contract claim are adequately alleged. As Bendix argues, however, Mr. Bethel does not allege facts that, if proven, would demonstrate that Bendix played an active and substantial part in causing Sandia to cease paying royalties to Mr. Bethel under their contract. Doc. 40 at 8. In response to Bendix's motion, Mr. Bethel argues that Sandia refused to perform its agreement with Bethel "as a direct consequence of [Bendix's] actions." Doc. 45 at 15. But nowhere in the FAC does Mr. Bethel tie Bendix's actions, namely collusion with Sandia to use Mr. Bethel's software "as its own" and cutting Mr. Bethel out of its agreement with Sandia, to Sandia's decision to cease making royalty payments to Mr. Bethel on sales of the SAI-340.

Without any allegations that, if proven, would establish that Sandia's treatment of Mr. Bethel vis-à-vis the contract between them was actually "the direct consequence" of Bendix's actions, there is inadequate factual support for Mr. Bethel's conclusory allegation that Bendix played an active and substantial part in causing Bethel to lose the benefits of his contract with

Sandia.  And because the FAC does not adequately allege that Bendix induced Sandia's breach in the first instance, it follows that the FAC does not adequately allege that it did so without justification and privilege.  According, Mr. Bethel does not adequately allege against Bendix either the third element or the fifth element of his interference with existing contract claim.  That claim thus must be dismissed as against Bendix.

For the same reasons, Mr. Bethel's allegations are insufficient to support his claim of intentional interference with prospective contractual relations.  The FAC is devoid of factual allegations that, if proven, would show that Bendix's conduct induced or otherwise caused Sandia to discontinue its relationship with Mr. Bethel or decline to commence any unidentified new relationship with Mr. Bethel, or prevented Mr. Bethel from acquiring or continuing any unidentified prospective relationship with Sandia.  Accordingly, his interference with prospective contractual relations claim also must be dismissed as against Bendix.

B.    Prima Facie Tort

In Count XI, Mr. Bethel asserts a claim of prima facie tort.  In support of that claim, he alleges that "Defendants have intentionally and maliciously refused to abide by the terms of their contract with Bethel for pretextual and baseless reasons."  Doc. 38 ¶ 205.  To adequately allege a prima facie tort claim, a plaintiff must state facts that, if proven, would demonstrate "(1) an intentional and lawful act; (2) an intent to injure the plaintiff; (3) injury to the plaintiff as a result of the intentional act; (4) and the absence of sufficient justification for the injurious act." *Beaudry v. Farmers Ins. Exch.,* 412 P.3d 1100, 1104 (N.M. 2018) (citation omitted).  A prima facie tort claim is "used to address wrongs that otherwise escape categorization, but should not be used to evade stringent requirements of other established doctrines of law."  *Bogle v. Summit Inv. Co., LLC*, 107 P.3d 520, 529 (N.M. Ct. App. 2005) (emphasis added) (citation omitted).

Bendix argues that because Mr. Bethel's allegations address only the failure to abide by the contract between Sandia and Mr. Bethel, and because Bendix was not a party to that contract and therefore had no obligation to abide by that contract, those allegations are insufficient to allege an intentional and lawful act by Bendix.  Doc. 40 at 11.  In his response, Mr. Bethel contends that "all of the preceding paragraphs of the Amended Complaint were also incorporated into the prima facie tort claim," and that those paragraphs describe "unjustified intentional acts by [Bendix] that were designed to and did injure [him]."  Doc. 45 at 23.

A claim for prima facie tort, however, is not adequately pleaded where it is "supported by identical facts [] used to support the other causes of action within the plaintiff's complaint." *Healthsource, Inc. v. X-Ray Assoc. of N.M.*, 116 P.3d 861, 872 (N.M. Ct. App. 2005); *Hill v. Cray Research*, 864 F. Supp. 1070, 1080 (D.N.M. 1991) (dismissing prima facie tort claim where, in support of that claim, the plaintiff "merely reallege[d] the facts in support of the other causes of action, adding only a bare recital of the elements of prima facie tort relating to intent and justification").  Here, other than alleging facts that do not pertain to Bendix, namely, the refusal "to abide by the terms" or "honor obligations" under the contract between Sandia and Mr. Bethel, Mr. Bethel "does not assert any separate factual basis to support [his] prima facie tort claim."  *Id.*  Rather, the only facts used to support the claim that arguably apply to Bendix "are those incorporated from other causes of action mentioned within the complaint."  *Id.* Accordingly, Mr. Bethel's prima face claim as against Bendix is subject to dismissal, as it "duplicates other claims made by [him]."  *Id.*; *Hill*, 864 F. Supp. at 180 ("The value and validity of prima facie tort as a separate cause of action depends upon its ability to offer relief for the intentional infliction of harm where the actor's otherwise lawful conduct cannot be brought within other more traditional categories of liability.").

16

Even if the Court were to consider the allegations identified by Mr. Bethel as factual support for his prima facie tort claim, those allegations would not be sufficient to support his claim, as none of them identifies a *lawful* act.  To the contrary, Mr. Bethel alleges that Bendix and Sandia *unlawfully* used his copyrighted work, both in breach of his contract with Sandia and in violation of the copyright laws.  *See* Doc. 45.  But a prima facie tort claim requires a showing of an intentional *and lawful* act.  Indeed, "[p]rima facie tort is intended to provide a remedy for persons harmed by acts that are intentional and malicious, *but otherwise lawful*, which fall outside of the rigid traditional intentional tort categories."  *Bogle*, 107 P.3d at 529.  Mr. Bethel has identified no "otherwise lawful" conduct attributable to Bendix on which to base his prima facie claim.  For this additional reason, his prima facie claim must be dismissed as against Bendix.

C.     Unjust Enrichment

In Count VIII, Mr. Bethel asserts a claim of unjust enrichment, alleging that "Defendants, through the acts alleged above, have knowingly benefitted at the expense of Bethel," and that "[a]llowing Defendants to retain those financial benefits would be unjust given the manner in which such benefits were realized by the Defendants."  Doc. 38 ¶ 30.  To adequately state such a claim, a plaintiff must allege facts that, if proven, would show that (1) "another has been knowingly benefitted at [the plaintiff's] expense" (2) "in a manner such that allowance of the other to retain the benefit would be unjust."  *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 698 (N.M. Ct. App. 2000).  "The theory has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity."  *Id.* at 698-99.  Accordingly, where there *is* a contract between the parties, an unjust enrichment claim is not available.  *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.,* 407 F.3d 1091, 1117 (10th

17

Cir. 2005) (affirming summary judgment on unjust enrichment claim based on underpayment of royalties where that claim was "grounded in the parties' contractual relationship").

Bendix argues, *inter alia*, that Mr. Bethel's unjust enrichment claim is preempted by the Copyright Act.  Doc. 40 at 10.   "[A] state-law claim is preempted [by the Copyright Act] if (1) the work is within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106."  *R.W. Beck v. E3 Consulting, LLC*, 557 F.3d 1133, 1146 (10th Cir. 2009) (citations omitted).  Mr. Bethel does not contest the first requirement, and indeed, argues vigorously elsewhere that Bendix and Sandia copied, without authorization, his copyrighted work.  Thus, preemption turns on whether the unjust enrichment claim asserted by Mr. Bethel is "equivalent to any of the exclusive rights within the general scope of copyright, as specified in 17 U.S.C. § 106."  *Id.* at 1147.

As noted above, Section 106 grants to the copyright owner the exclusive rights to reproduce the copyrighted work, prepare derivative works, distribute copies of the work, and display the work publicly.  *Id.*  "When a right defined by state law may be abridged by an act which, in and of itself, would infringe one of the exclusive rights, the state law in question must be deemed preempted."  *Id.* (citation omitted).  But "when a state law violation is predicated upon an act incorporating elements beyond mere reproduction or the like, the rights involved are not equivalent and preemption will not occur."  *Id.*  In determining whether the second requirement is met, courts thus "look to whether an extra element is required in addition to the elements of a copyright claim."  *Kobi Karp Architecture & Interior Design, Inc.*, No. 19-civ-21079, 2021 WL 4819903, at *6 (S.D. Fla. Oct. 15, 2021) (citation omitted).  Notably "an extra element will only prevent preemption if that element changes the nature of the action so that it is

18

*qualitatively* different from a copyright infringement claim." *Id.* (emphasis in original) (citation omitted).

In support of his unjust enrichment claim, Mr. Bethel refers to "the acts alleged above" as factual support for his allegation that Defendants "knowingly benefitted" at his expense. As explained earlier, those alleged "acts," if proven, would demonstrate that Sandia and Bendix reproduced Mr. Bethel's design and software, prepared derivative works based on his copyrighted work, and distributed copies of Mr. Bethel's copyrighted work to the public. In other words, the allegations in the FAC "assert rights that are equivalent to rights under the Copyright Act." *R.W. Beck*, 577 F.3d at 1148 (finding that, in context of unjust enrichment claim, allegations that defendant "reproduced and distributed" plaintiff's reports asserted rights equivalent to rights under the Copyright Act).

Mr. Bethel appears to concede this point but argues that the FAC includes "an extra element sounding in contract: the implied promise of compensation in the form of royalty payments." Doc. 45 at 21. An unjust enrichment claim, however, cannot lie where there is a contractual basis for the rights asserted by the plaintiff. Mr. Bethel's allegations that he was deprived of royalty payments – a deprivation that he describes as "sounding in contract" – thus provide no factual support, in the first instance, for his unjust enrichment claim. It follows that the alleged deprivation of royalty payments is not an extra element that converts his claim "to something more than the equivalent of a claim of copyright infringement." *Id.* Accordingly, Mr. Bethel's unjust enrichment claim as against Bendix is preempted by the Copyright Act and is subject to dismissal on that basis.

D.    Civil Conspiracy

In Count V, Mr. Bethel asserts a claim of civil conspiracy, alleging that Defendants

"entered into a tacit agreement to carry out actions they knew or should have known were wrongful, and which were intended to harm Bethel and to deprive him of the benefits of the contract he had entered into with certain Defendants."  Doc. 38 ¶ 168.  To state a claim of civil conspiracy, a plaintiff must allege facts that, if proven, would show "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts."  *Seeds v. Lucero*, 113 P.3d 859, 863–64 (N.M. Ct. App. 2005) (citation omitted).  "Unlike a conspiracy in the criminal context, a civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability unless a civil action in damages would lie against one of the conspirators."  *Id.* (citation omitted).  Accordingly, "[w]ithout an actionable civil case against one of the conspirators, [] an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense."  *Id.* (citation omitted).

Bendix argues, *inter alia*, that Mr. Bethel's conspiracy claim fails because he has failed to allege any plausible civil action for damages against Bendix.  Doc. 40 at 9.  Because the Court has determined that Mr. Bethel's substantive state law claims will be dismissed, the only "actionable" claim remaining in this case against Bendix is Mr. Bethel's copyright infringement claim.  Indeed, the FAC provides factual support for Mr. Bethel's conspiracy claim only insofar as it relates to Bendix and Sandia's "tacit agreement . . . to impair his intellectual property rights," as there are no allegations contained therein to support his conclusory allegations that there was a "tacit agreement" between Sandia and Bendix "to deprive Bethel of the benefits of his contract" or to "misappropriate trade secrets."  Doc. 38 ¶ 170.  Thus, as with Mr. Bethel's unjust enrichment claim, the Court must determine whether Mr. Bethel's conspiracy claim is preempted by the Copyright Act.  *Kobi Karp*, 2021 WL 4819903, at *6 (holding that whether a

"claim for civil conspiracy is preempted by federal copyright law is a threshold issue and dispositive, and therefore the Court will review preemption *sua sponte*").

Because his civil conspiracy claim relies on Bendix's alleged infringement of his copyrighted work, it necessarily "is a claim that protects rights and asserts claims equivalent to those under the Copyright Act." *Emmerich Newspapers, Inc. v. Particle Media, Inc.*, No. 21-civ-32, 2022 WL 843209, at *4 (S.D. Miss. Mar. 21, 2022). Further, his civil conspiracy claim contains no "extra element" to save it from preemption, as the Copyright Act "extends secondary liability via well-established common law principles to those who induce, encourage, or profit from another's infringement." *Id.*; *see also Kobi Karp*, 2021 WL 4819903, at * 6 ("Because copyright law already recognizes vicarious copyright infringement concepts, which extend joint and several liability to those who participate in the copyright infringement, a civil conspiracy claim does not add substantively to the underlying federal copyright claim and should therefore be preempted.") (citation omitted). Indeed, Mr. Bethel has successfully alleged contributory infringement in this case. It follows that "the agreement element of the conspiracy claim does not make that claim qualitatively different from [Mr. Bethel's] copyright claim." *Kobi Karp*, 2021 WL 4819903, at * 6 (citation omitted). As Mr. Bethel's conspiracy claim relates to his copyrightable work, and as that claim does not add a qualitatively different element to copyright infringement, both requirements for preemption are met here. As a result, Mr. Bethel's conspiracy claim as against Bendix is preempted and thus subject to dismissal.

    E.    <u>Constructive Trust</u>

In Count IX, Mr. Bethel asserts that he is entitled to a constructive trust, alleging that "[c]ertain of the monies paid to Defendants by consumers for Defendants' products that use, incorporate, or are derived from Bethel's software and intellectual property is owed to Bethel

and Bethel has the right to immediate possession of those monies."  Doc. 38 ¶ 193.  "Under New

Mexico law, the imposition of a constructive trust is an equitable remedy."  *Oliver v. Meow Wolf*,

No. 20-civ-237, 2020 WL 6939875, at *17 (D.N.M. Nov. 25, 2020) (citation omitted).  "The

purpose of a constructive trust is to prevent the unjust enrichment that would result if the person

having the property were permitted to retain it."  *Id.* at *18 (citation omitted).  Importantly, "for a

court to impose this remedy, there must be some underlying wrong giving rise to the equitable

duty of the owner of the property to convey it to the party from whom it was wrongfully taken."

*Id.*

Bendix argues that the remedy of a constructive trust is not appropriate here, as Mr.

Bethel has failed to plead an underlying claim that merits relief.  Doc. 40 at 11.  In response, Mr.

Bethel contends that imposition of a constructive trust is proper "to prevent the unjust

enrichment that would result" if Bendix were permitted to retain the monies paid by consumers

for the KI-300 that "uses, incorporates, or [is] derived from Bethel's software and intellectual

property."  Doc. 45 at 22.  But as set forth above, Mr. Bethel's unjust enrichment claim as

against Bendix is preempted and thus subject to dismissal.  It follows that there is no actionable

"underlying wrong" remaining in this case that would give rise to an equitable duty on Bendix's

part to convey anything to Mr. Bethel.  Accordingly, the Court may not impose on Bendix the

remedy of a constructive trust.

F.    Punitive Damages

In Count XII, Mr. Bethel asserts that "Defendants' actions and conduct [] were

undertaken by Defendants maliciously, willfully, recklessly and/or wantonly, making all

Defendants jointly and severally subject to an award of punitive damages."  Doc. 38 ¶ 211.

Bendix moves for dismissal of this claim, arguing that a request for punitive damages is not a

cause of action, but rather a remedy, and that because none of Mr. Bethel's remaining clams are

viable, Mr. Bethel is not entitled to punitive damages.  Doc. 40 at 12.

As Mr. Bethel concedes, "requesting punitive damages is not a separate cause of action

that should be set out separately in the Complaint." *Guidance Endodontics, LLC v. Dentsply

Int'l, Inc.,* 708 F. Supp. 2d 1209, 1271 (D.N.M. 2010).  And as discussed above, the Court has

determined that the remainder of Mr. Bethel's state law claims are subject to dismissal.

"Because punitive damages are not recoverable in statutory copyright infringement actions," the

Court dismisses, as against Bendix, Mr. Bethel's claim for punitive damages as a separate claim

and strikes it from the prayer for relief.  *Emmerich Newspapers,* 2022 WL 843209, at *4; *see

also Wood v. Houghton Mifflin Harcourt Pub. Co.*, 589 F. Supp. 2d 1230, 1252 (D. Colo. 2008)

(explaining that plaintiff "may not recover punitive damages for copyright infringement").

## CONCLUSION

For the reasons set forth herein, Mr. Bethel's claims for direct and contributory

infringement against Mr. Bethel adequately state a claim upon which relief can be granted, and

thus will not be dismissed.  Mr. Bethel's state law claims against Mr. Bethel, however, do not

adequately state a claim upon which relief can be granted, and thus will be dismissed as against

Bendix.

**IT IS THEREFORE ORDERED** that Defendant Honeywell International, Inc.'s

Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim [Doc. 40] is

**GRANTED IN PART** and **DENIED IN PART**, as follows:  Mr. Bethel's copyright

infringement claim and contributory copyright infringement claim, as alleged against Bendix in

Counts I and IV, remain viable; Mr. Bethel's claims for intentional interference with contract and

interference with prospective contractual relations, as alleged in Count IV, are dismissed as

against Bendix; Mr. Bethel's claim for civil conspiracy, as alleged in Count V, is dismissed as against Bendix; Mr. Bethel's claim for unjust enrichment, as alleged in Count VIII, is dismissed as against Bendix; Mr. Bethel's claim for constructive trust, as alleged in Count IX, is dismissed as against Bendix; Mr. Bethel's claim for prima facie tort, as alleged in Count XI, is dismissed as against Bendix, and Mr. Bethel's claim for punitive damages, as set forth in Count XII, is dismissed as against Bendix.

DATED this 16th day of February 2023.

MARTHA VAZQUEZ
Senior United States District Judge